**HOLMES, TAYLOR, SCOTT & JONES LLP**
Andrew B. Holmes (SBN: 185401)
abholmes@htsjlaw.com
Patrick V. Chesney (SBN: 267587)
patrick.chesney@htsjlaw.com
617 South Olive Street, Suite 1200
Los Angeles, California  90014
Tel:  (213) 985-2200
Fax: (213) 973-6282

Attorneys for defendant
Sean Paul Nevett

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>      vs.<br><br>TROY JOSEPH FLOWERS, SEAN PAUL NEVETT, AND FRUITION, INC. (f/k/a SEACOAST ADVISORS, INC.),<br><br>            Defendants. | Case No.  17CV1456 JAH JLB<br><br>Hon. John A. Houston<br><br>**SEAN PAUL NEVETT'S ANSWER TO COMPLAINT** |

Defendant Sean Paul Nevett ("Mr. Nevett") hereby answers the Complaint of Plaintiff Securities and Exchange Commission (the "SEC") by denying all allegations set forth in the Complaint not specifically admitted herein.

Nothing in this non-verified Answer constitutes a sworn statement under oath or a waiver of Mr. Nevett's rights, including his Fifth Amendment rights. *See ACLI Int'l Commodity Svcs. v. Banuqe Populaire Suisse*, 110 F.R.D. 278, 287–88 (S.D.N.Y. 1986) (statements in answers cannot constitute a waiver of Fifth Amendment rights because they are neither testimonial nor under oath). Further, to the extent applicable, Mr. Nevett asserts his Fifth Amendment right against self-incrimination.

Mr. Nevett otherwise responds as follows:

## JURISDICTION AND VENUE

1. Answering paragraph 1, Mr. Nevett admits this Court has jurisdiction. Mr. Nevett denies the remaining allegations, except to the extent that the allegations constitute legal conclusions that do not require a response.

2. Answering paragraph 2, Mr. Nevett admits this Court has jurisdiction but denies the remaining allegations.

3. Answering paragraph 3, Mr. Nevett admits venue is proper because he resides in this district and Fruition, Inc. ("Fruition") is headquartered and/or does business in this district. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

## SUMMARY

4. Answering paragraph 4, Mr. Nevett admits that he and defendant Flowers were business partners but denies the remaining allegations.

5. Answering paragraph 5, Mr. Nevett denies the allegations.

6. Answering paragraph 6, the allegations set forth in this paragraph constitute legal conclusions and therefore no response is required. To the extent a

HOLMES, TAYLOR, SCOTT & JONES LLP
617 South Olive Street, Suite 1200
Los Angeles, California 90014

response is required, Mr. Nevett denies the allegations.

## THE DEFENDANTS

7. Answering paragraph 7, Mr. Nevett admits that he understands Troy Joseph Flowers ("Mr. Flowers") to be around 50 years old and reside in Solana Beach, California. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

8. Answering paragraph 8, Mr. Nevett admits the allegations.

9. Answering paragraph 9, Mr. Nevett admits that he understands Fruition is headquartered in or around Del Mar, California but lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

## RELATED ENTITIES

10. Answering paragraph 10, Mr. Nevett admits that Licont Corp. was a Nevada corporation that, to Mr. Nevett's understanding, was headquartered in San Diego and was developing a multidisciplinary personal injury-preferred provider network. Mr. Nevett also admits that, according to the Nevada Secretary of State's website, Licont's business license was granted in May 2011 and was revoked in May 2015. Mr. Nevett also admits that Licont stock was quoted on the OTC Bulletin Board on or around May 2, 2011, using the ticker symbol "LNTP." Mr. Nevett denies that he "became involved" with Licont in September 2012 because he does not understand what the SEC means by that terminology. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

11. Answering paragraph 11, Mr. Nevett admits that Artec Global Media is a Nevada corporation that, to his understanding, is headquartered in San Diego, California. Mr. Nevett also admits that Artec purportedly offered online marketing

and web services solutions but lacks knowledge and/or information sufficient to understand what the SEC means by "the relevant period," and denies those allegations on that basis. Mr. Nevett also admits that Artec was quoted on the OTC Bulletin Board using the ticker symbol "ACTL." Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

### THE FRAUDULENT CONDUCT[1]

**A.   Flowers' and Nevett's Scheme to Profit by Fraudulently Manipulating the Price of Publicly Traded Stocks**

12.   Answering paragraph 12, Mr. Nevett admits that he and Mr. Flowers were business partners but denies the remaining allegations.

13.   Answering paragraph 13, Mr. Nevett admits that "shell companies," as the term is generally understood, may be used for a number of legitimate purposes. Mr. Nevett denies that he and Mr. Flowers had an "operation," as he understands the SEC's use of that term. The remainder of the paragraph constitutes definitions that do not require a response.

14.   Answering paragraph 14, Mr. Nevett admits that, on at least one occasion, he and Mr. Flowers acquired a shell company and appointed a chief executive officer that they mutually agreed upon. Mr. Nevett also admits that, on at least one occasion, he provided accounting, legal, and public relations support for the chief executive officer. As to the remaining allegations, Mr. Nevett does not know what the SEC means by "the shell" (e.g., whether this refers to a specific company and, if so, which one) and therefore denies them on that ground.

15.   Answering paragraph 15, Mr. Nevett does not know who the SEC is referring to by "[t]he CEO" and therefore denies the allegations on that ground.

---

[1] For ease of reference, Mr. Nevett includes the SEC's headings in this Answer. However, Mr. Nevett does not consider the headings to constitute allegations and, consistent with this Answer, denies any wrongdoing.

16. Answering paragraph 16, this paragraph constitutes definitions that do not require a response. However, Mr. Nevett agrees that this paragraph states the generally accepted definitions for "restricted shares" and "unrestricted shares."

17. Answering paragraph 17, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Mr. Flowers's conduct and therefore denies those allegations on that basis. Mr. Nevett also does not know what shares the SEC is referring to by "the unrestricted shares" and therefore denies the allegations on that basis.

18. Answering paragraph 18, Mr. Nevett denies the allegations. Mr. Nevett also does not know what shares the SEC is referring to by "the unrestricted shares" and therefore denies the allegations on that basis.

19. Answering paragraph 19, Mr. Nevett denies the allegations.

20. Answering paragraph 20, Mr. Nevett denies the allegations.

21. Answering paragraph 21, Mr. Nevett denies the allegations.

22. Answering paragraph 22, and construing "the companies" to be Licont and Artec (based on the SEC's allegations in preceding paragraphs 20 and 21), Mr. Nevett admits that those companies were incorporated in Nevada. Mr. Nevett denies the remaining allegations.

### B.   The Licont Scheme

#### 1.   Flowers and Nevett organize Licont

23. Answering paragraph 23, Mr. Nevett admits that he has visited a chiropractor and surfed with an individual with the initials "T.R." Mr. Nevett denies the remaining allegations.

24. Answering paragraph 24, Mr. Nevett denies the allegations.

25. Answering paragraph 25, Mr. Nevett admits that, at some point, T.R. met Mr. Flowers. Mr. Nevett denies the remaining allegations.

26. Answering paragraph 26, Mr. Nevett admits his understanding that, as of August 2012, Mr. Flowers owned shares of Licont. Mr. Nevett lacks knowledge

and/or information sufficient to form a belief about the truth of the allegation concerning whether, and how much, Mr. Flowers paid for those shares. Mr. Nevett denies the remaining allegations.

27. Answering paragraph 27, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Mr. Flowers's conduct. Mr. Nevett denies the remaining allegations.

28. Answering paragraph 28, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Mr. Flowers's conduct. Mr. Nevett denies the remaining allegations.

29. Answering paragraph 29, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Mr. Flowers's conduct. Mr. Nevett denies the remaining allegations.

30. Answering paragraph 30, Mr. Nevett admits that an individual with the initials "T.R." because the CEO and sole director of Licont on or around August 31, 2012. Mr. Nevett denies the remaining allegations.

31. Answering paragraph 31, Mr. Nevett admits that this paragraph recites certain information contained in the referenced Form 8-K/A.

32. Answering paragraph 32, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Mr. Flowers's conduct. Mr. Nevett denies the remaining allegations.

33. Answering paragraph 33, Mr. Nevett denies he "controlled" approximately 50% of the outstanding shares of Licont. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Mr. Flowers's ownership and therefore denies the remaining allegations on that basis.

34. Answering paragraph 34, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations and therefore denies the allegations on that basis.

35. Answering paragraph 35, Mr. Nevett denies the allegations.

36. Answering paragraph 36, Mr. Nevett does not know what the SEC means by "meaningful operations" and therefore denies the allegations on that basis.

37. Answering paragraph 37, Mr. Nevett admits that this paragraph recites certain information contained in the referenced Form 10-K.

38. Answering paragraph 38, Mr. Nevett admits that this paragraph recites certain information contained in the referenced Form 10-K.

39. Answering paragraph 39, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations and therefore denies them on that basis.

40. Answering paragraph 40, Mr. Nevett admits the allegations.

**2.   Flowers' and Nevett's manipulative trading in Licont securities**

41. Answering paragraph 41, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations and therefore denies them on that basis.

42. Answering paragraph 42, Mr. Nevett denies the allegations.

43. Answering paragraph 43, Mr. Nevett denies the allegations.

44. Answering paragraph 44, Mr. Nevett acknowledges that the SEC states the generally accepted definition for "IP addresses" but denies the remaining allegations.

45. Answering paragraph 45, Mr. Nevett denies the allegations.

46. Answering paragraph 46, Mr. Nevett denies the allegations.

47. Answering paragraph 47, Mr. Nevett denies the allegations.

48. Answering paragraph 48, Mr. Nevett admits that Licont was trading at around $3.45 per share on September 5, 2012 and around $7.35 per share on February 6, 2013. Mr. Nevett denies the remaining allegations.

49. Answering paragraph 49, Mr. Nevett denies the allegations.

50. Answering paragraph 50, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations concerning Fruition's and Mr. Flowers's alleged proceeds and sales and therefore denies those allegations on that basis. Mr. Nevett denies the remaining allegations.

51. Answering paragraph 51, Mr. Nevett admits that, on or around September 5, 2012, Licont had virtually no operations. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

52. Answering paragraph 52, Mr. Nevett denies the allegations.

53. Answering paragraph 53, Mr. Nevett denies that Licont shares closed at $4.50 per share on October 24, 2012, but admits they closed at $4.49 per share on that date. Mr. Nevett denies the remaining allegations.

54. Answering paragraph 54, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

55. Answering paragraph 55, Mr. Nevett denies the allegations.

56. Answering paragraph 56, Mr. Nevett admits that Licont stock hit a high of $8.69 per share on August 22, 2013 and was trading at around $2.50 per share in November 2014. Mr. Nevett denies the remaining allegations.

57. Answering paragraph 57, Mr. Nevett admits that, from the period of November 2012 through November 2014 (which, based on paragraphs 55 and 56, appear to be what the SEC means by "the period of the manipulation"), Licont had virtually no operations. Mr. Nevett denies the remaining allegations.

**C.   The Artec Scheme**

    **1.   Nevett and Flowers organize Artec**

58. Answering paragraph 58, Mr. Nevett admits he has a friend with the initials "C.W." Mr. Nevett denies the remaining allegations.

59. Answering paragraph 59, Mr. Nevett admits that, at some point, C.W.

met Mr. Flowers. Mr. Nevett denies the remaining allegations.

60. Answering paragraph 60, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

61. Answering paragraph 61, Mr. Nevett admits that this paragraph recites certain information contained in the referenced Form 10-K.

62. Answering paragraph 62, Mr. Nevett denies that he acquired control of the unrestricted shares of Artec. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

63. Answering paragraph 63, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

64. Answering paragraph 64, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

65. Answering paragraph 65, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

66. Answering paragraph 66, Mr. Nevett admits that Artec's Form 10-K for the fiscal year ending on January 31, 2014, Artec had total assets of $23,107 (consisting of cash of $5,285 and prepaid expenses of $17,822), total liabilities of $1,100, and an accumulated deficit since August 6, 2012 of $58,893. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

67. Answering paragraph 67, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

**2.     Nevett's and Flowers' manipulative trading in Artec**

68.     Answering paragraph 68, Mr. Nevett denies the allegations.

69.     Answering paragraph 69, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

70.     Answering paragraph 70, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

71.     Answering paragraph 71, Mr. Nevett admits that he knows someone with the initials "A.J." Mr. Nevett denies he told A.J. not to sell any shares of Artec. Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the remaining allegations therein, and denies them on that ground.

72.     Answering paragraph 72, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

73.     Answering paragraph 73, Mr. Nevett denies the allegations.

74.     Answering paragraph 74, Mr. Nevett admits that Artec was trading at around $2.50 per share on November 18, 2013 and around $4.93 per share in September 2014. Mr. Nevett denies the remaining allegations.

75.     Answering paragraph 75, Mr. Nevett denies the allegations.

76.     Answering paragraph 76, Mr. Nevett denies the allegations.

77.     Answering paragraph 77, Mr. Nevett denies the allegations.

78.     Answering paragraph 78, Mr. Nevett denies the allegations.

79.     Answering paragraph 79, Mr. Nevett denies the allegations

80.     Answering paragraph 80, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

81.     Answering paragraph 81, Mr. Nevett admits that Artec traded at $5 per

share on or around August 22, 2014. Mr. Nevett denies the remaining allegations.

82. Answering paragraph 82, Mr. Nevett admits that in November 2014 Artec stock was trading at about $2.72 per share and in June 2015 Artec stock was trading at about $0.41 per share. Mr. Nevett denies the remaining allegations.

### 3. Defendants' efforts to conceal Nevett's involvement in the Artec scheme

83. Answering paragraph 83, Mr. Nevett denies the allegations.

84. Answering paragraph 84, Mr. Nevett denies the allegations.

85. Answering paragraph 85, Mr. Nevett denies the allegations.

86. Answering paragraph 86, Mr. Nevett denies the allegations.

### D. Defendants Acted With The Requisite State Of Mind

87. Answering paragraph 87, the allegations that Nevett acted with scienter, engaged in a scheme to defraud, and committed acts that would operate as a fraud or deceit are legal conclusions that do not require a response. Mr. Nevett denies the remaining allegations.

88. Answering paragraph 88, the allegations that Nevett acted negligently in perpetuating a fraudulent scheme are legal conclusions that do not require a response. Mr. Nevett denies the remaining allegations.

89. Answering paragraph 89, Mr. Nevett denies the allegations.

90. Answering paragraph 90, Mr. Nevett lacks knowledge and/or information sufficient to form a belief about the truth of the allegations therein, and denies them on that ground.

## FIRST CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)**

**(against all Defendants)**

91. Answering paragraph 91, Mr. Nevett incorporates by reference paragraphs 1 through 90 above.

92. Answering paragraph 92, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

93. Answering paragraph 93, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

94. Answering paragraph 94, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

95. Answering paragraph 95, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

## SECOND CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a)(1) and (3) of the Securities Act**

**(against all Defendants)**

96. Answering paragraph 96, Mr. Nevett incorporates by reference paragraphs 1 through 90 above.

97. Answering paragraph 97, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

98. Answering paragraph 98, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

99. Answering paragraph 99, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

HOLMES, TAYLOR, SCOTT & JONES LLP
617 South Olive Street, Suite 1200
Los Angeles, California 90014

100. Answering paragraph 100, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

101. Answering paragraph 101, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

### THIRD CLAIM FOR RELIEF

**Manipulation of Securities Prices**

**Violations of Section 9(a)(1) of the Exchange Act**

**(against all Defendants)**

102. Answering paragraph 96, Mr. Nevett incorporates by reference paragraphs 1 through 86, 89, and 90 above.

103. Answering paragraph 103, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

104. Answering paragraph 104, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

105. Answering paragraph 105, the allegations are legal conclusions that do not require a response. To the extent a response is required, Mr. Nevett denies the allegations.

Mr. Nevett reserves the right to amend this Answer as necessary once the precise nature of the relevant circumstances or events is determined through discovery.

### AFFIRMATIVE DEFENSES

Without assuming the burden of proof for such defenses that he would not otherwise have, Mr. Nevett asserts the following affirmative defenses:

### First Affirmative Defense

The SEC's Complaint, and each claim alleged therein, fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

On information and belief, Mr. Nevett alleges that the losses identified by the SEC, if any, were caused by the other defendants in this action, and not by Mr. Nevett. As such Mr. Nevett should not be liable therefor. At a minimum, Mr. Nevett's liability is secondary to the other defendants.

### Third Affirmative Defense

The SEC's claims are barred, in whole or in part, because Mr. Nevett acted in good faith at all material times and in conformity with all applicable federal statutes, including the Securities Act and Exchange Act, and all applicable rules and regulations promulgated thereunder.

### Fourth Affirmative Defense

The SEC's claim for injunctive relief is barred because, inter alia, there has been no violation of the Securities Act or the Exchange Act, and because there is no reasonable likelihood that any violation will be repeated. The SEC's injunctive relief claim is further barred because the adverse effects of any injunction far outweigh any benefit from an injunction.

### Fifth Affirmative Defense

The SEC's claim for penalties is barred because, inter alia, any alleged violation was isolated and/or unintentional.

### Sixth Affirmative Defense

The SEC's claim for disgorgement is barred because, inter alia, Mr. Nevett never received any ill-gotten gains as a result of any of the actions alleged in the

Complaint.

### Seventh Affirmative Defense

Mr. Nevett hereby gives notice that he intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserves all rights to amend this Answer and all such defenses.

### PRAYER

WHEREFORE, Defendant Mr. Nevett prays that this Court enter a judgment as follows:

1. That the Complaint as to Mr. Nevett be dismissed with prejudice and that judgment be entered in favor of Mr. Nevett;
2. That the SEC take nothing by way of the Complaint from Mr. Nevett;
3. That Mr. Nevett be awarded his costs of suit incurred in the defense of this action, including reasonable attorney's fees pursuant to the Equal Access to Justice Act (or as otherwise authorized); and
4. For such further and other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Defendant Sean Paul Nevett hereby demands a jury for all claims for which a jury is permitted.

Dated:  October 3, 2017            HOLMES, TAYLOR, SCOTT & JONES LLP

By:   /s/ Andrew B. Holmes
      Andrew B. Holmes
      Attorneys for Sean Paul Nevett

# **PROOF OF SERVICE**

I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 617 S. Olive Street, Suite 1200, Los Angeles, California 90014.

On **October 3, 2017**, I served the following document(s) described as

- **SEAN PAUL NEVETT'S ANSWER TO COMPLAINT**

on the interested party(ies) in this action as follows:

**See Attached Service List**

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address abholmes@htsjlaw.com to the e-mail addresses set forth in the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **BY U.S. MAIL:** I served the documents by enclosing them in an envelope and depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **October 3, 2017**, at Los Angeles, California.

                                                                  /s/Andrew B. Holmes
                                                                   Andrew B. Holmes

# SERVICE LIST

Joel M. Athey
Nicholas B. Melzer
Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
(213) 896-2400
joel.athey@hklaw.com
nicholas.melzer@hklaw.com
***Attorneys for Defendants Troy Joseph Flowers and Fruition, Inc.***

John B. Bulgozdy
Adrienne D. Gurley
bulgozdyj@sec.gov
gurleya@sec.gov
U.S. Securities and Exchange Commission
444 S. Flower Street, Ste. 900
Los Angeles, CA 90071
(323) 965-3998
Attorneys for Plaintiff
U.S. Securities and Exchange Commission